# EXHIBIT A

Andrew G. Deiss (#7184)
Billie Jean Siddoway (#9710)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

*Attorneys for Plaintiffs*

## THE UTAH THIRD DISTRICT COURT, IN AND FOR SALT LAKE COUNTY, SALT LAKE CITY DIVISION

| | | |
|---|---|---|
| HERMITAGE ESTATES LIMITED, a Bahamaian corporation; AIP RESORT DEVELOPMENT LLC, a Delaware limited liability company; AMERICAN INSTITUTIONAL PARTNERS LLC, a Delaware limited liability company; | : : : : : : : | **SUMMONS** |
| Plaintiffs, | : : : | Case No. |
| vs. | : : | Judge |
| BARRY SILVERTON, an individual, | : : | |
| Defendant. | : : | |

### TO THE ABOVE-NAMED DEFENDANT, **BARRY SILVERTON**:

YOU ARE HEREBY SUMMONED and required to appear and defend this action in this

Court, the address of which is:

> Clerk of the Court
> Third District Court for Salt Lake County
> 450 South State Street
> P.O. Box 1860
> Salt Lake City, Utah 84101

811888v1

*EXHIBIT "1"*

10/03/2007 07 17 FAX  801 328 0537          Jones/Waldo Lawfirm                          ☑ 005/011

and to serve upon plaintiffs' attorneys at the following address:

> Andrew G. Deiss
> Billie Jean Siddoway
> JONES, WALDO, HOLBROOK & McDONOUGH
> 170 South Main Street, Suite 1500
> Salt Lake City, Utah 84101

an answer in writing to the Complaint which is herewith served upon you, within thirty (30) days

after service of this Summons upon you, exclusive of the day of service.

IF YOU FAIL SO TO DO, judgment by default will be taken against you for the relief

demanded in the Complaint, which Complaint has been filed with the Clerk of the Court.

DATED this 2nd day of October, 2007.

JONES, WALDO, HOLBROOK & McDONOUGH

By: Andrew G. Deiss
    Billie J. Siddoway
    *Attorneys for Plaintiff*

Serve Defendant at:

12021 Wilshire Blvd
PMB Suite 1900
Los Angeles, CA  90025

116 North Tigertail Rd
Los Angeles, CA  90049

811888v1

Andrew G. Deiss (#7184)
Billie Jean Siddoway (#9710)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

*Attorneys for Plaintiffs*

### THE UTAH THIRD DISTRICT COURT, IN AND FOR SALT LAKE COUNTY, SALT LAKE CITY DIVISION

| | |
|---|---|
| HERMITAGE ESTATES LIMITED, a Bahamian corporation; AIP RESORT DEVELOPMENT LLC, a Delaware limited liability company; AMERICAN INSTITUTIONAL PARTNERS LLC, a Delaware limited liability company; | COMPLAINT |
| Plaintiffs, | Case No. |
| vs. | Judge |
| BARRY SILVERTON, an individual, | |
| Defendant. | |

Plaintiffs Hermitage Estates Limited, AIP Resort Development LLC and American Institutional Partners LLC (collectively "Plaintiffs"), by and through their undersigned counsel, complain and allege as follows.

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Hermitage Estates Limited ("Hermitage") is a Bahamian Corporation with its principal place of business at 155 North 400 West, Suite 150, Salt Lake City, Utah.

811812v1

2.      Plaintiff AIP Resort Development, LLC ("AIPRD") is a Delaware Limited Liability Company with its principal place of business located at 155 North 400 West, Suite 150, Salt Lake City, Utah.  AIPRD is the managing member of Hermitage.

3.      Plaintiff American Institutional Partners ("AIP") is a Delaware Limited Liability Company with its principal place of business at 155 North 400 West, Suite 150, Salt Lake City, Utah.  AIP is the owner and sole member of AIPRD.

4.      Defendant Barry Silverton is an individual who, upon information and belief, resides at 116 North Tigertail Road, Los Angeles, California, and he maintains an office at 12021 Wilshire Boulevard, PMB Suite 1900, Los Angeles, California.  Silverton does business in Utah, and he has frequently traveled to and transacted business with Plaintiffs in Utah.  Silverton is a minority owner and non-managing member of Hermitage.

5.      Jurisdiction is proper pursuant to Utah Code Section 78-3-4.

6.      Venue is proper pursuant to Utah Code Section 78-13-7.

## GENERAL ALLEGATIONS

7.      Beginning in 2006, AIPRD became the managing member of Hermitage and, in that capacity, took over the development of Little Exuma Island in the Bahamas.

8.      In August 2007, AIPRD commenced negotiations with Sonnenblick-Del Rio Development, Inc. ("Sonnenblick") for Hermitage to sell approximately 128 acres of development property in Little Exuma (the "Property"), for a purchase price of approximately $136,000,000 million, for purposes of the development of two resort hotels, a casino, a marina, a commercial boardwalk, and other commercial uses.

811812-1

10/18/2007 18:32 FAX   310 277 8050          LOBS LAW OFFICE                    ☑006/039

10/18/2007 07:17 FAX   801 328 9537          Jones/Waldo Lawfirm                ☑006/011

9.      In September, Sonnenblick provided four Letters of Intent ("LOIs") outlining the terms upon which Sonnenblick would purchase the Property for approximately $136,000,000 with a closing date within 120 days.

10.     On September 21, 2007, Sonnenblick informed Plaintiffs that it would not proceed with execution of the LOIs and the purchase and sale of the Property contemplated by the LOIs because of statements made by Silverton to Sonnenblick.

11.     Silverton told Sonnenblick that Silverton is the owner and managing member of Hermitage and that AIPRD is not the managing member and has no legal authority to act on behalf of Hermitage and to effect the purchase and sale contemplated in the LOIs.

12.     Silverton also told Sonnenblick that he had a $100 million default judgment against AIPRD.

13.     When Silverton made these false claims to Sonnenblick, Silverton know of Sonnenblick's negotiations with Hermitage and AIPRD regarding the LOIs and the purchase and sale of the Property contemplated in the LOIs.

14.     Silverton intended by his actions and false statements and claims to interfere with the negotiations and execution of the LOIs and to prevent Hermitages' sale of the Property to Sonnenblick.

15.     Silverton's actions and false statements were improper and were improperly and maliciously motivated to induce and have in fact induced Sonnenblick to cease negotiations and to refuse to proceed with the execution of the LOIs and the purchase and sale of the Property.

811813v1

10/18/2007 07 13 FAX  801 320 0537         Jones/Waldo lawfirm                       ☑008/011

## FIRST CLAIM FOR RELIEF
### INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

16.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

17.   Silverton intentionally interfered with Plaintiffs' economic relations with Sonnenblick.

18.   Silverton's ill will toward Plaintiffs predominated over any legitimate economic motivation he might have had.

19.   Silverton's means of interference, as set forth in paragraphs 11 through 14 were contrary to statute, regulation or common law or violated an established standard of a trade or profession.

20.   Silverton's actions and false statements have damaged Plaintiffs in an amount to be determined at trial

## SECOND CLAIM FOR RELIEF
### SLANDER OF TITLE

21.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

22.   As set forth in paragraphs 10 through 12, Silverton made false representations disparaging Plaintiffs' title and interest in the Property.

23.   Silverton's actions and false statements were improperly and maliciously motivated to induce and have in fact induced Sonnenblick to cease negotiations and to refuse to proceed with the execution of the LOIs and the purchase and sale of the Property

811812v1

10/18/2007 18:32 FAX  310 277 8050        LD&S LAW OFFICE                    ☐008/038

1: 0:/2007 07 18 FAX  801 328 0537     Jones/Waldo Lawfirm                  ☐010/011

24.    Silverton's actions and false statements caused actual and special damages to

Plaintiffs in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### UNFAIR PRACTICES ACT

25.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs of

this Complaint as though fully set forth herein.

26.    By his actions and false statements, Silverton engaged in unfair business practices

in violation of the Utah Unfair Practices Act, Utah Code Section 13-5-1 *et seq* (the "Act").

27.    Plaintiffs have been damaged in an amount to be determined at trial.

28.    Pursuant to the Act, Plaintiffs are entitled to recover treble damages.

29.    Furthermore, Plaintiffs should be granted injunctive relief barring Silverton from

persisting in actions and false statements as alleged in paragraphs 11 and 12.

### JURY DEMAND

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

Plaintiffs respectfully requests the following relief:

1.    For an order enjoining Silverton from persisting in actions and false statements
      injurious to Plaintiffs;

2.    For a determination by this Court that Silverton has no independent right, title or
      interest in or to the Property;

3.    For damages, including actual, special and treble damages, against Silverton in an
      amount to be determined at trial;

811817v1

10 02 2007 07 10 FAX  801 320 0527      Jones/Waldo Lawfirm              ☑011/011

4.      For attorneys' fees and costs to the maximum extent allowed by law; and

5.      For such other and further relief as the Court deems just and equitable.

DATED this 2nd day of October, 2007.

JONES, WALDO, HOLBROOK & McDONOUGH

By:   Andrew G. Deiss
       Billie J. Siddoway
       *Attorneys for Plaintiff*

Plaintiffs' Address:
155 North 400 West, Suite 150
Salt Lake City, UT 84103

811812v1

10/18/2007  19:33 FAX  310 277 8050          LD&S LAW OFFICE                    ☑010/039

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of May 23, 2006 by and between Hamby Limited ("Hamby"), on the one hand, Barry Silverton ("BS") and Hermitage Estates Limited ("HES") (collectively "Silverton"), on the second hand, and AIP Resort Development, LLC ("AIP") and Island Development Group LLC ("IDG") (collectively "A-I"), on the third hand.  Each of the above parties is sometimes referred to herein as a "Party" and are collectively referred to herein as "Parties."

    A.     HAMBY and Silverton entered into a Stockholder's Agreement as of December 17, 2004.

    B.     Hermitage is the owner of a parcel of land of approximately 1400 acres on the Island of Little Exuma in the Bahamas (the "Property"), which HES intends to develop (the "Project").

    C.     Silverton and A-I entered into a Master Investment Agreement dated as of June 22, 2005, which agreement also relates to the Property and the Project.  AIP also entered into a Loan Agreement ("AIP Loan Agreement") with BS dated as of June 22, 2005.

LEGAL_US_W # 51644664.5

**EXHIBIT "2"**

10/18/2007 18:33 FAX  310 277 8050          LOAS LAW OFFICE                    ⓩ011/039

D.      There is an approved business plan for the Project (the "Business Plan")
dated as of January or February 2006. The Parties hereto hereby ratify and confirm the
Business Plan, except to the extent inconsistent herewith.

E.      There is presently pending in Los Angeles County Superior Court, State of
California, an action entitled Hamby Limited vs. Barry Silverton, et. al., being designated
as Case Number BC 338370 (the "Action"). BS and HES have filed a cross-complaint in
the Action.

F.      There is currently pending in the Bahamas an action entitled Hermitage
Estates Limited vs. Hamby Limited, being designated as Common Law/Equity Division
Case Number 783/2005 (the "Bahamas Action").

G.      The Parties hereto have fully investigated the claims, cross-claims and
counter-claims of each other as alleged in the lawsuit, and otherwise. All of the Parties
have consulted with their own independently selected attorneys and advisors regarding
the results of such investigations, and the effect thereof on the legal, equitable and factual
issues that have been raised, or could have been raised, in connection with the lawsuit
and otherwise. All of the Parties are now fully satisfied that they have full and complete
knowledge of the facts and circumstances related to all of such issues.

H.      The parties, individually and by and through their independently selected
attorneys, have engaged in extensive good faith mediation in an effort to settle the

LEGAL US_W # 55640660 1                              2

disputes that are the subject of the Action and the Bahamas Action including claims
relating to the Property and the Project.

NOW AND THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.      RECITALS INCORPORATED.  The recitals set forth in Paragraphs A
through H, inclusive and alone, are incorporated herein by reference and made a material
part hereof.

2.      LOAN BY HAMBY.  HAMBY hereby agrees to loan HES within the
next five business days (the "New Loan") the funds necessary to pay off and/or redeem
the mortgage on the Property in the principal amount of $3,333,333.33 held by Deidre
Coralie Bowe and Newell Kenneth Bowe (the "Bowe Mortgage"), the exact amount of
which HES shall advise Hamby within three business days.  From the proceeds of the
New Loan, HES immediately shall make a tender to the mortgagee of the Bowe
Mortgage to pay off immediately the Bowe Mortgage in full, including accrued interest
and fees, in a form required by Bahamian law.  If the mortgagee rejects the tender, the
proceeds of the New Loan immediately shall be returned to Hamby, and Hamby shall
continue to hold the funds available for use to payoff the Bowe Mortgage, unless
Bahamian law requires otherwise to effectuate a valid tender.  Additionally, HES shall
immediately commence an action in the proper jurisdiction to enforce its rights to pay
and satisfy the Bowe Mortgage.  The New Loan (excluding any sums returned to Hamby
if the tender is rejected) shall bear interest at the rate of 20% per annum, payable interest

3

only, the first payment being due in one year, and thereafter on a quarterly basis, with the

principal and interest due in full after 36 months, and may be prepaid at any time without

penalty. In the event of a default in the payment of interest that has not been cured by the

later of thirty days after written notice of default by Hamby and the minimum notice

period provided under the laws of the Bahamas, Hamby may declare the New Loan due

and payable. The New Loan shall be secured by a first priority mortgage (the "New

Mortgage") on the Property in favor of HAMBY. All Parties agree to use their best

efforts to obtain any and all permits necessary for the New Mortgage to be operative

under the laws of the Bahamas. In the event the New Loan is funded prior to the New

Mortgage being approved by the Government of the Bahamas, HES shall use all

reasonable efforts to persuade the mortgagee under the Bowe Mortgage to assign and

transfer to Hamby as collateral for the New Loan. Simultaneously upon recordation and

Government approval of the New Mortgage and delivery to Hamby of a policy of title

insurance insuring the New Mortgage, HAMBY shall execute the appropriate documents

to effect a release of the mortgage that is the subject of the Bahamas Action (the "Hamby

Mortgage") and the Bowe Mortgage.


    3.    STOCK OWNERSHIP IN HES. Effective immediately, the stock

ownership in HES shall be as follows: AIP - 50%; HAMBY – 25%; BS and/or his

nominees as defined in Section 8 (or an entity owned by BS or members of his immediate

family) – 25%. The Parties shall cooperate to have stock certificates reflecting these

ownership interests issued as soon as possible and to have those certificates receive

4

whatever approvals are necessary from the Government of the Bahamas. Hamby shall
provide to counsel for HES such information as is required to obtain such approval. If
for any reason Hamby is unable to obtain the necessary approvals, Hamby has the right to
assign its stock ownership to another entity or person, who shall be bound by this
Agreement as if it were Hamby.

    3.1    The stock in HES issued to BS and HAMBY shall be irrevocable,
unconditional, fully paid and non-assessable and not subject to dilution. The stock in
HES issued to BS and Hamby also shall be non-assignable, non-transferable, non-
mortgageable, non-pledgeable and non-lienable, and shall contain restrictive legends to
such effect, and any attempted violation of this prohibition shall be null and void.

    3.2    Except as provided in this sub-paragraph, and except as may be
necessary to effectuate the provisions of Section 7 hereof, the stock issued to BS and
HAMBY shall be non-voting. Notwithstanding the prior sentence, AIP shall have
management control with the authority to make all decisions affecting HES, the Property
and the Project, with the exception that any material changes in the Business Plan
(including sales of the Property or portions of the Property inconsistent with the
Business Plan) shall require the approval of 75% of the stock ownership, and the sale of
the entire Property within two years of this Agreement shall require the approval of
100% of the stock ownership. AIP shall regularly (not less frequently than quarterly)
report on the business of HES to both Hamby and Silverton, and Hamby and Silverton

shall have the right to inspect (on reasonable notice) all books and records maintained regarding HES, the Property and the Project.

    4.    DISTRIBUTIONS AND DIVIDENDS BY HES.  The capital contributions of the owners of HES shall be deemed to be as follows: AIP - $9 million; BS - $7.5 million; HAMBY – $100.  From and after the date hereof, all net operating income (income after payment of operating expenses of HES) and all proceeds derived from capital events (proceeds after payment of related costs) received or otherwise realized by HES shall be paid in the following order of priority:

    4.1    First, to AIP and Silverton, on a proportional basis according to their capital contributions, until AIP has received a sum equal to $9 million and Silverton has received a sum equal to $7.5 million, plus simple interest thereon from May 23, 2006, at the rate of 20% per annum.

    4.2    Second, to BS, AIP and Hamby on a proportional basis according to their ownership interests as set forth above in the first paragraph of Section 3.

    4.3    Notwithstanding Sections 4.1 to 4.2 above, no distributions of net operating income or net capital events shall be made until such time as the New Loan has been paid in full.

    5.    DISTRIBUTION OF LAND.

5.1     As soon as reasonably practicable, HES shall deliver a deed(s) to

Hamby for 60 acres of the Property, free and clear of all liens and mortgages (the

"Hamby Property"). The exact location of the Hamby Property shall be decided by Alan

Cottle and Jack Bistricer and memorialized in a writing to be attached hereto. The

Parties hereto shall be bound by their decision. Hamby may develop on these 60 acres a

maximum of 60 single family residences. HES shall provide all necessary infrastructure

to the Hamby Property at its own cost and expense. The Hamby Property shall be

subject to the Business Plan.

5.2     As soon as reasonably practicable after the Property is subdivided,

HES shall deliver deeds to BS, Hamby and AIP for three one-acre lots each, free and

clear of all liens and mortgages. BS, Hamby and AIP shall be able to pick the location

of their lots in succession in the order of BS, Hamby and AIP, one lot at a time. BS and

AIP shall not have to pay for their lots. Hamby shall have to pay $500,000 per lot, and

Hamby shall have the option of deciding not to purchase one or all of its three lots.

Payment shall be made only when title is delivered to Hamby, free and clear of all liens.

HES shall provide all necessary infrastructure to all nine of these lots at its own cost and

expense.

6.     COOPERATION. The Parties hereto shall execute any and all documents,

and shall cooperate with one another to obtain any permits or consents, reasonably

required to carry out the intent of this Agreement.

7.      OFFICERS AND DIRECTORS OF HES. The Parties hereto, which

encompass all of the present beneficial shareholders of HES, hereby vote to elect the

following officers and directors of HES, who shall take office immediately: Alan Cottle

(President), Rodney Rasmussen (Secretary-Treasurer), and Mathew Tullis. Present

officers and directors shall resign and are hereby removed. Any vacancies shall be filled

by AIP. To the extent necessary, BS shall cause any persons who hold stock in HES as

his nominee to ratify this provision. Any notice required to effectuate this election is

hereby waived.

8.      TERMINATION OF PRIOR AGREEMENTS. Except as provided in

Section 2 above with respect to the Hamby Mortgage, all prior agreements among the

Parties hereto, and any of them, are hereby terminated and shall have no further force and

effect. This includes, without limitation, the following agreements among the Parties

hereto (and their predecessors): the Letter of Intent dated as of November 27, 2004

between Talisker Realty Ltd. and HES; the Stockholder's Agreement dated as of

December 17, 2004 among Hamby, BS, and M. Renee Taylor and Shantell Armbrister

(as nominees of BS ("Nominees")); the Master Investment Agreement dated as of June

22, 2005, among BS, Hermitage, AIP and IDG; the Loan Agreement dated as of June 22,

2005, among BS and AIP; and the Pledge Agreement dated as of June 22, 2005, among

BS, M. Renee Taylor and Shantell Armbrister (as nominees of BS), and AIP; the Stock

Option Grant and Agreement dated as of June 22, 2005, among BS, IDG and AIP.

9.      DISMISSAL OF ACTION AND BAHAMAS ACTION.  Hamby and

Silverton immediately shall file the appropriate papers to dismiss with prejudice the

Action and the Bahamas Action, all Parties to bear their own costs and fees.  The Parties

shall also file the appropriate documents in the Bahamas Action requesting the court to

negate and render a nullity the order entered on May 12, 2006.


10.     EACH PARTY TO BEAR ITS OWN FEES AND COSTS.  Each Party

shall bear such Party's attorney's fees, and costs incurred and to be incurred with regard

to the Action and the negotiation and execution of this Agreement.


11.     RELEASE.


11.1    Release by Hamby.  Based on the understandings and agreements

set forth herein, and expressly excluding the Parties' respective rights and obligations

under this Agreement, Hamby for itself and its respective predecessors (including

Talisker Realty Ltd.), predecessors in interest, successors, successors in interest,

partners, members, parents, affiliates, subsidiaries, attorneys, and each of their current

and former directors, officers and employees, contractors, subcontractors, insurers,

engineers and all persons acting by, through, under or in concert with any of them

(Hamby's "Affiliates"), agrees to hereby absolutely, fully and forever release and

discharge Silverton and A-I, and each of them, together with their respective

predecessors, predecessors in interest, successors, successors in interest, partners,

Nominees, members, parents, affiliates, subsidiaries, attorneys, and each of their current

and former directors, officers and employees, contractors, subcontractors, insurers, engineers and all persons acting by, through, under or in concert with any of them (Silverton and A-I's "Affiliates") from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney's fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, whether fixed or contingent, that Hamby may have or ever had against Silverton and/or A-I prior to the date of this Agreement ("Hamby's Claims"). Hamby's Claims specifically include, but are not limited to, any such claims alleged in, which could have been alleged in, or which are related in any way to the complaint in the Action, and all matters relating to the Property and/or the Project.

11.2   Release by Silverton. Based on the understandings and agreements set forth herein, and expressly excluding the Parties' respective rights and obligations under this Agreement, Silverton for themselves and their Affiliates, agree to hereby absolutely, fully and forever release and discharge Hamby (including Jacob Joseph Bistricer) and A-I, together with their Affiliates, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, whether fixed or contingent, that Silverton may have or ever had against Hamby and/or A-I prior to the date of this

10

LEGAL_US_W # 51624006.9

Agreement ("Silverton's Claims"). Silverton's Claims specifically include, but are not limited to, any such claims alleged in, which could have been alleged in, or which are related in any way to the cross-complaint in the Action, the complaint in the Bahamas Action, and all matters relating to the Property and/or the Project. Silverton shall indemnify Hamby and A-I for any claim made by the Nominees against Hamby, A-I, and/or HES or their Affiliates.

11.3    Release by A-I. Based on the understandings and agreements set forth herein, and expressly excluding the Parties' respective rights and obligations under this Agreement, A-I for themselves and their Affiliates, agree to hereby absolutely, fully and forever release and discharge Hamby (including Jacob Joseph Bistricer) and Silverton, together with their Affiliates, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, whether fixed or contingent, that A-I may have or ever had against Hamby and/or Silverton prior to the date of this Agreement ("A-I's Claims"). A-I's Claims specifically include, but are not limited to, any such claims relating to the Property and/or the Project.

11.4    Each party further agrees that there is a risk that subsequent to the execution of this Agreement each party and/or its successor may incur or suffer loss,

11

damage or injuries which are in some way caused by Hamby's Claims, Silverton's Claims or A-1's Claims (collectively, "Claims") referred to above, but which are unknown and unanticipated at the time this Agreement was signed. Each party hereto understands and acknowledges that it is releasing, for itself and its successors, all such Claims by executing this Agreement.

        11.5    Waiver of Civil Code Section 1542. With regard to the Release set forth above, each of the Parties hereto, for itself and its Affiliates, expressly waives the provisions of California Civil Code Section 1542, and any similar law, statute or policy. California Civil Code Section 1542 states as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER
> MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR."

Each of the Parties understands and acknowledges the significance and consequences of this waiver of California Civil Code Section 1542 and confirms that he/she/it has either discussed or been given an opportunity to discuss such matters with counsel of that party's choice.

12.      NO ADMISSION OF LIABILITY. This Agreement is the result of a compromise and shall never at any time for any purpose be considered an admission of liability or responsibility on the part of any party hereto, and all Parties continue to deny such liability and to disclaim such responsibility.

13.      APPLICABLE LAW. This Agreement is made in, and shall be governed, construed and enforced under the laws of, the State of California, with any action brought under this Agreement to be filed in Los Angeles, California.

14.      ATTORNEYS' FEES. If any Party brings a claim or action in connection with or related to this Agreement the prevailing party shall be entitled to recover its reasonable attorneys' fees in addition to all other costs allowed by law.

15.      BINDING ON SUCCESSORS. This Agreement, and in particular the Releases contained in section 11 above, shall he binding on the Affiliates and assigns of each party and shall be effective as of the date first written above.

16.      ENTIRE AGREEMENT. This Agreement constitutes the entire understanding and agreement of the Parties with respect to the settlement of their disputes, and it supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. Each of the Parties acknowledges that no other Party, nor any agent, representative or attorney of any other Party, has made any promise,

agreement, covenant, representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement that is not contained in this Agreement.

17.    AMENDMENT. This Agreement may not be modified, amended, supplemented or terminated, and no provision of this Agreement shall be waived, except by a writing executed by the Party to be charged.

18.    ADVICE OF COUNSEL. In executing this Agreement, the Parties acknowledge that they have consulted with and have had the advice and counsel of attorneys licensed to practice law, and that they have executed this Agreement without fraud, duress or undue influence.

19.    AUTHORITY OF SIGNATORIES. The signatories to this Agreement represent that they have read and fully understand the Agreement and that they are authorized to execute the same on behalf of the Party they represent. No consent of any other person or entity is required in order for this Agreement to be valid.

20.    PRIOR REVIEW OF THE AGREEMENT. Each Party acknowledges that the Agreement has been fully read, reviewed and understood by its authorized signatory.

21.    CONSTRUCTION AND HEADINGS. This Agreement has been prepared based on the joint efforts of the Parties. This Agreement is to be construed simply and fairly and not strictly for or against any of the Parties. The paragraph

headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

22.      COUNTERPARTS. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one and the same instrument. The Parties hereto will accept facsimile of the signature pages provided that the original signature pages are mailed to the other Parties' counsel immediately after those pages are signed.

> PLEASE READ THIS DOCUMENT CAREFULLY.
> THIS SETTLEMENT AGREEMENT INCLUDES A
> RELEASE OF ALL KNOWN AND UNKNOWN
> CLAIMS.

IN WITNESS WHEREOF, the parties do execute this Agreement:

HAMBY LIMITED

By:_____

Name:_____

Title: _Respect & officer_

HERMITAGE ESTATES LIMITED

By: _Barry Silverton_
Name: _BARRY SILVERTON_
Title: _ATTORNEY IN FACT_

_Barry Silverton_
BARRY SILVERTON

AIP RESORT DEVELOPMENT LLC

By:_____
Name:_____
Title:_____

ISLAND DEVELOPMENT GROUP LLC

By:_____
Name:_____
Title:_____

May 23, 2006

It is hereby agreed that the Settlement Agreement (the "Agreement") dated as of May 23, 2006, shall be deemed to be an offer by Hamby and Silverton to AIP and IDG, which offer shall be kept open until midnight CA time on May 25, 2006. Acceptance of the offer shall be accomplished by the execution of the Agreement by AIP and IDG and delivery via fax or email of their signature pages to counsel for Hamby and Silverton.

HAMBY LIMITED,

By:
Name:
Title:

HERMITAGE ESTATES LIMITED

By:
Name: BARRY SILVERTON
Title: ATTORNEY IN FACT

BARRY SILVERTON

Title: _Resident Officer_

HERMITAGE ESTATES LIMITED

By: _Barry Silverton_
Name: _BARRY SILVERTON_
Title: _ATTORNEY IN FACT_

_Barry Silverton_
BARRY SILVERTON

AIP RESORT DEVELOPMENT LLC

By: _Alan W. Cottle_
Name: _ALAN W. COTTLE_
Title: _Manager_

ISLAND DEVELOPMENT GROUP LLC

By: _____
Name: _Keith RICHARDSON_
Title: _Manager_

06/08/2006  23:27   <167871231                     BISTRICER                        PAGE 02/05

## AMENDMENT TO SETTLEMENT AGREEMENT

THIS AMENDMENT TO SETTLEMENT AGREEMENT (this "Amendment") is made and dated as of the 1st day of June, 2006, but effective as of May 23, 2006, by and among Hamby Limited ("Hamby"), Barry Silverton ("BS"), Hermitage Estates Limited ("HES"), AIP Resort Development, LLC ("AIP") and Island Development Group LLC ("IDG"). Each of the above parties is sometimes referred to herein as a "Party" and are collectively referred to herein as "Parties.".

### WITNESSETH:

WHEREAS, the Parties are all the parties to that certain Settlement Agreement dated as of May 23, 2006 (the "Original Settlement Agreement");

WHEREAS, pursuant to and in accordance with the Original Settlement the Parties agreed, among other agreements, that, as soon as reasonably practicable, distributions of certain parcels of land (the "Hamby Property") would be made by HES to Hamby free and clear of all liens and mortgages.

WHEREAS, the Parties desire to amend and modify the Original Settlement Agreement as set forth herein (as so amended and/or modified the "Settlement Agreement");

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises of the parties hereto, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending legally to be bound, hereby agree as follows:

1. The recitals to this Amendment are fully incorporated by this reference as if set forth herein.

2. Unless otherwise provided herein, the terms used in this Amendment with initial capital letters shall have the same meanings ascribed to such terms, respectively, in the Original Settlement Agreement.

3. The Parties do hereby agree that the Hamby Property is more specifically described on Exhibit A annexed hereto and made a part hereof, subject to any necessary adjustments and/or substitutions as may practicably be required and hereafter agreed to by Hamby and Hermitage after the relevant approvals has been granted by the Bahamian Government under the Private Roads and Subdivisions Act. ~~/M/~~   (collectively, the "Consistency Requirement")

4. The Parties agree that simultaneously with the execution of this Amendment, HES shall execute and deliver to Hamby ~~a promissory note and~~ the New Mortgage ~~each of~~ which shall be consistent with the provisions of Section 2 of the Original Settlement Agreement and otherwise in form reasonably satisfactory to Hamby/HES and their respective counsel, ~~together with duly executed and legally effective corporate resolutions of HES authorizing the execution and delivery of such note and New Mortgage,~~ which New Mortgage may be immediately lodged for recording upon Hamby obtaining all necessary permits, if any,

LEGAL_US_E # 70975346 3

**EXHIBIT "3"**

8E/08/2006  23:27   4167871231              BISTRICER                    PAGE  83/85

*after a Satisfaction duly executed*
*by Hamby as to the existing Hamby mortgage is lodged*
*for recording.*
*Bahamian Law*

*— such other customary exceptions to title consistent with Bahamian practices as would still allow Hamby to obtain marketable title upon a foreclosure or exercise of the power of sale, and*

under the International Persons Landholding Act for Hamby to own and hold the New Mortgage. The Parties hereto do further agree that, at any time following the procurement of such approvals, at the request of Hamby, HES shall (i) at HES's expense, cause a title insurance policy to be issued in favor of Hamby insuring the lien of such New Mortgage subject only to the Hamby Mortgage and, to the extent then applicable, the Bowe Mortgage and (ii) redate and re-execute the mortgage instrument as agreed between the respective counsels of Hamby and HES (the "Redated New Mortgage") which Redated New Mortgage may be immediately lodged for recording against the Project and the Property. *Within 7 days of execution of this Amendment,* *HES shall execute and deliver to Hamby a promissory note meeting the Continuity Requirement—*

5.      At all times hereafter, Hamby shall be permitted to enter upon, use and occupy the Hamby Property for any use or purpose permitted by applicable Bahamian law, *and not* *otherwise inconsistent with the terms of the Settlement Agreement.*

6.      The Parties do hereby undertake, covenant and agree that no loan may be accepted by HES and no mortgage or other lien or security interest may be recorded against its property unless the lender of such loan and/or the holder of such lien, mortgage or other security interest prior to or simultaneously with the advance of such loan and/or the grant of such lien, mortgage or other security interest, agree to recognize and to not disturb the rights, entitlements and interests of Hamby in and to the Hamby Property as set forth in this Settlement Agreement. *In the event HES desires to encumber the Hamby property, which is* *likely, then subject to the foregoing, Hamby shall cooperate by executing such documents as may* *reasonably be requested to effectuate such encumbrance.* The Parties hereby acknowledge that, except to the extent specifically modified or amended by this Amendment, all of the terms, covenants and provisions set forth in the Original Settlement Agreement shall continue unmodified and in full force and effect.

8.      If any provision of this Amendment, or the application of such provision to any Person or circumstance, shall be held invalid, the remainder of this Amendment shall not be affected thereby.

9.      This Amendment shall be construed in accordance with and governed by the laws of the State of California (without regard to principles of conflicts of laws).

10.     This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, and together shall be deemed one in the same document and each counterpart may be delivered by facsimile or email to the other Parties.

[Signature Page Follows]

*and a duly executed* *and legally effective* *corporate resolution* *of HES authorizing* *the execution and delivery thereof and* *and ratifying the execution and delivery* *of the New Mortgage.*

LEGAL_US_E # 70973346.3

-2-

06/08/2006  23:27   4167871231              BISTRICER                    PAGE  04/05

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

HAMBY LIMITED

By: _____
      Name:
      Title:

HERMITAGE ESTATES LIMITED

By: _____
      Name:
      Title:

BARRY SILVERTON

AIP RESORT DEVELOPMENT LLC

By: _____
      Name:
      Title:

ISLAND DEVELOPMENT GROUP LLC

By: _____
      Name:
      Title:

LEGAL_US_E # 70973346.3                    -3-

06/08/2006  23:27    4167071231               BISTRICER                      PAGE  04/05

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

HAMBY LIMITED

By: _____
      Name:
      Title:

HERMITAGE ESTATES LIMITED

By: _____
      Name:
      Title: attorney in fact

_____
BARRY SILVERTON

AIP RESORT DEVELOPMENT LLC

By: _____
      Name:
      Title:

ISLAND DEVELOPMENT GROUP LLC

By: _____
      Name:
      Title:

LEGAL_US_E # 70975346.3                     - 3 -

06/88/2806   23:27      4167871231                BISTRICER                        PAGE  03/05

## EXHIBIT A

### IDENTIFICATION OF HAMBY PROPERTY

The description of the parcels noted below is based on the plan dated January 24, 2006, prepared by Bauer Planning & Engineering for HES:

| Parcels: | Acres |
| --- | --- |
| C1 | 5 |
| F-1D | 8 |
| F-1C | 9.5 |
| PC-4 | 9.39 |
| D3 | 10.0 |
| Beach lots 5, 6, 7, 8, 9 | 5 |
| L6  Bulkhead lots 4, 5, 6, 7 | 4 |
| Beach front lots 44, 45, 46, 47, 48, 49, 50 | 7 |
| Lot 79 | 1 |

Approximately 59 acres are described above. If at the actual count it is less then 60 acres, then the 60 acres can be completed by adding Lots 51 and/or 52. If at the actual count it is more the 60 acres; then the 60 acres can be completed by deleting acreage from the F-1D or F-1C parcels.

LEGAL US_E # 70975346.3                          - 4 -

## AMENDMENT TO SETTLEMENT AGREEMENT

THIS AMENDMENT TO SETTLEMENT AGREEMENT (this "Amendment") is made and dated as of the 9th day of June, 2006, but effective as of May 23, 2006, by and among Hamby Limited ("Hamby"), Barry Silverton ("BS"), Hermitage Estates Limited ("HES"), AIP Resort Development, LLC ("AIP") and Island Development Group LLC ("IDG"). Each of the above parties is sometimes referred to herein as a "Party" and are collectively referred to herein as "Parties.".

### WITNESSETH:

WHEREAS, the Parties are all the parties to that certain Settlement Agreement dated as of May 23, 2006 (the "Original Settlement Agreement");

WHEREAS, pursuant to and in accordance with the Original Settlement the Parties agreed, among other agreements, that, as soon as reasonably practicable, distributions of certain parcels of land (the "Hamby Property") would be made by HES to Hamby free and clear of all liens and mortgages.

WHEREAS, the Parties desire to amend and modify the Original Settlement Agreement as set forth herein (as so amended and/or modified the "Settlement Agreement");

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises of the parties hereto, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending legally to be bound, hereby agree as follows:

1.      The recitals to this Amendment are fully incorporated by this reference as if set forth herein.

2.      Unless otherwise provided herein, the terms used in this Amendment with initial capital letters shall have the same meanings ascribed to such terms, respectively, in the Original Settlement Agreement.

3.      The Parties do hereby agree that the Hamby Property is more specifically described on Exhibit A annexed hereto and made a part hereof, subject to any necessary adjustments and/or substitutions as may practicably be required and hereafter agreed to by Hamby and Hermitage after the relevant approvals has been granted by the Bahamian Government.

4.      The Parties agree that simultaneously with the execution of this Amendment and prior to the advance of the New Loan, HES shall execute and deliver to Hamby a promissory note and the New Mortgage each of which shall be consistent with the provisions of Section 2 of the Original Settlement Agreement and otherwise in form reasonably satisfactory to Hamby (collectively, the "Consistency Requirements"), which New Mortgage may be immediately lodged for recording upon Hamby obtaining all necessary permits, if any, under Bahamian law for Hamby to own and hold the New Mortgage. The Parties hereto do further

agree that, at any time following the procurement of such approvals, at the request of Hamby, HES shall (i) at HES's expense, cause a title insurance policy to be issued in favor of Hamby insuring the lien of such New Mortgage subject only to the Hamby Mortgage, to the extent then applicable, the Bowe Mortgage and such other customary exceptions to title consistent with customary Bahamian practices as would still allow Hamby to obtain marketable title upon a foreclosure or exercise of the power of sale and (ii) redate and re-execute the mortgage instrument as agreed between the respective counsels of Hamby and HES (the "Redated New Mortgage") which Redated New Mortgage may be immediately lodged for recording against the Project and the Property after a satisfaction of the existing Hamby Mortgage has been duly executed by Hamby and lodged for recording. Within seven (7) days of the execution of this Amendment, HES shall execute and deliver to Hamby a duly executed and legally effective corporate resolution of HES authorizing the execution and deliver of the New Mortgage and such promissory note.

     5.    At all times hereafter, Hamby shall be permitted to enter upon, use and occupy the Hamby Property for any use or purpose permitted by applicable Bahamian law and not otherwise inconsistent with the Settlement Agreement.

     6.    The Parties do hereby undertake, covenant and agree that no loan may be accepted by HES and no mortgage or other lien or security interest may be recorded against its property unless the lender of such loan and/or the holder of such lien, mortgage or other security interest shall prior to or simultaneously with the advance of such loan and/or the grant of such lien, mortgage or other security interest, agree to recognize and to not disturb the rights, entitlements and interests of Hamby in and to the Hamby Property as set forth in this Settlement Agreement. In the event HES desires to encumber the Property (including the Hamby Property), which is likely, then subject to the foregoing, Hamby shall cooperate by executing such documents as may be reasonably necessary to effectuate such encumbrance.

     7.    The parties hereby acknowledge that, except to the extent specifically modified or amended by this Amendment, all of the terms, covenants and provisions set forth in the Original Settlement Agreement shall continue unmodified and in full force and effect.

     8.    If any provision of this Amendment, or the application of such provision to any Person or circumstance, shall be held invalid, the remainder of this Amendment shall not be affected thereby.

     9.    This Amendment shall be construed in accordance with and governed by the laws of the State of California (without regard to principles of conflicts of laws).

     10.    This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, and together shall be deemed one in the same document and each counterpart may be delivered by facsimile or email to the other Parties.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

HAMBY LIMITED

By: _____ _____

    Name:_
    Title:

HERMITAGE ESTATES LIMITED

By: _____
    Name:
    Title: President

_____
BARRY SILVERTON

AIP RESORT DEVELOPMENT LLC

By: _____ _____ _____ ___

    Name:
    Title:

ISLAND DEVELOPMENT GROUP LLC

By: _____ _____ _____ ___

    Name:
    Title:

LEGAL_US_E # 70999063.2

- 3 -

## EXHIBIT A

### IDENTIFICATION OF HAMBY PROPERTY

The description of the parcels noted below is based on the plan dated January 24, 2006, prepared by Bauer Planning & Engineering for HES:

| Parcels: | Acres |
| --- | --- |
| C1 | 5 |
| F-1D | 8 |
| F-1C | 9.5 |
| PC-4 | 9.39 |
| D3 | 10.0 |
| Beach lots 5, 6, 7, 8, 9 | 5 |
| L6  Bulkhead lots 4, 5, 6, 7 | 4 |
| Beach front lots 44, 45, 46, 47, 48, 49, 50 | 7 |
| Lot 79 | 1 |

Approximately 59 acres are described above. If at the actual count it is less then 60 acres, then the 60 acres can be completed by adding Lots 51 and/or 52. If at the actual count it is more the 60 acres, then the 60 acres can be completed by deleting acreage from the F-1D or F-1C parcels.

LEGAL_US_E # 70999661.2

## ATTACHMENT 5.1

Pursuant to Section 5.1 of the Settlement Agreement dated May 23, 2006, among Hamby Limited ("Hamby"), Hermitage Estates Limited ("HES"), Barry Silverton, AIP Resort Development, LLC, and Island Development Group LLC, the location of the 60 acres of the Property to be deeded to Hamby has been decided by Alan Cottle and Jack Bistricer, and is as follows. The description of the parcels noted below is based on the plan dated January 24, 2006, prepared by Bauer Planning & Engineering for HES:

| Parcels: | Acres |
| --- | --- |
| C1 | 5 |
| F-1D | 8 |
| F-1C | 9.5 |
| PC-4 | 9.39 |
| D3 | 10.0 |
| Beach lots 5, 6, 7, 8, 9 | 5 |
| L6  Bulkhead lots 4, 5, 6, 7 | 4 |
| Beach front lots 44, 45, 46, 47, 48, 49, 50 | 7 |
| Lot 79 | 1 |

Approximately 59 acres are described above. If at the actual count it is less then 60 acres, then the 60 acres can be completed by adding Lots 51 and/or 52. If at the actual count it is more the 60 acres, then the 60 acres can be completed by deleting acreage from the F-1D or F-1C parcels.

10/19/2007 18:37 FAX  310 277 8050        LD&S LAW OFFICE                    ☒039/039



**JONES WALDO**
HOLBROOK &
McDONOUGH PC

ATTORNEYS & COUNSELORS
EST. 1875

TEL: 801-521-3200
FAX: 801-328-0537

170 SOUTH MAIN ST, SUITE 1500
SALT LAKE CITY, UTAH 84101

WWW.JONESWALDO.COM

October 12, 2007


Richard C. Leonard
9430 Olympic Boulevard
Suite 400
Beverly Hills, CA 9022-4519

By Facsimile: 310-277-8050

Re:  *Hermitage Estates Limited v. Silverton*

Dear Mr. Leonard:

    We are in receipt of your letter dated October 10, 2007.  While we appreciate the information contained in the letter, there are obviously facts of which you are not aware. Moreover, as a lawyer practicing in California, your understanding of Utah law does not comport with ours.  We have taken your letter and its instruction to "guide ourselves accordingly" under advisement.

                         Very Truly Yours,

                         JONES, WALDO, HOLBROOK & McDONOUGH PC


                         Andrew G. Deiss


*EXHIBIT "8"*

SALT LAKE CITY, UTAH - ST. GEORGE, UTAH